EDWARD HAMLIN & another *vs.* NEW YORK, NEW HAVEN, AND HARTFORD RAILROAD COMPANY & another.

Suffolk.    December 8, 1897. — March 30, 1898.

Present: FIELD, C. J., MORTON, LATHROP, & BARKER, JJ.

*Railroad — Easement — Equity — Decree — Contempt.*

Where the decree in a suit in equity brought to compel the removal of certain obstructions in a way across a railroad, and to restrain further interference with the plaintiff's use thereof, expressly leaves open the right of the defendant to maintain gates, the plaintiff, to contest this right, should resort to proceedings where that right will be directly in issue; and the question cannot be raised in proceedings for contempt.

TWO PETITIONS, praying that the defendants suffer such judgment as the court might impose as a penalty for contempt.

---

Hearing before *Holmes*, J., who reported the cases for the consideration of the full court.    The facts appear in the opinion.

*R. M. Morse*, (*M. Morton* with him,) for the plaintiffs.

*J. H. Benton, Jr. & C. F. Choate, Jr.*, for the defendants.

MORTON, J.    The principal question which it is attempted to raise in these proceedings, and which has been discussed by counsel, is whether the defendants have the right to erect and maintain gates across the way on their location, the report showing that they have erected and maintained gates on the exterior lines of their location across the whole width of the way, thirty-eight and one half feet.

We think that the question cannot properly be raised and considered in the manner in which it has been attempted to raise it in these proceedings.    The original case was before the full court, and is reported in 166 Mass. 462.    After the decision in that case a final decree was entered, ordering the defendants to remove within thirty days all fences and barriers which they had constructed which interfered with the plaintiffs' right to use the way for foot passengers, animals, or vehicles of any kind, and enjoining them from interfering with the free use of the way for the purposes aforesaid by the plaintiffs, and requiring them to lay down and keep in repair a plank covering where the way crosses the railroad tracks.    The decree concluded with a provision as to cuts and this statement : " This decree is without prejudice to any right of the defendants to maintain proper gates or bars across said way."    After this decree was entered the defendants partially planked the way to about the width of sixteen feet, and erected a gate on each side of the track about twelve feet wide across the way.    Thereupon the plaintiffs brought a petition for contempt against the defendants for failure to comply with the decree.    A hearing was had upon this petition, and a decree was entered adjudging the defendants in contempt so far as they had " failed to lay down a plank covering thirty-eight and one half feet wide, and covering the whole space between the extreme outer rails of defendants' tracks and so much beyond the same as may be reasonably necessary," and " in so far as they have placed any fence within said thirty-eight and one half feet."    The decree ended as follows : " But it is declared hereby that a gate of thirty-eight and one half feet is permitted by the

final decree in the case." It is stated in the report that the defendants appealed from this decree, but that it was understood between the court and counsel that by complying with its terms the defendants should not lose any rights under the appeal, " and that if the defendants should erect suitable gates the question as to whether the defendants should be obliged to provide a man to open them might be thereafter raised by another petition for contempt." The defendants complied with the terms of the last decree as to the planking, and removed the gates that were twelve feet in width and erected the gates complained of. Thereupon the plaintiffs brought a second petition for contempt, and claimed at the hearing that the erection of the gates was a violation of the terms of the decree ; that the defendants were not required by law to erect them ; that it was done for the protection of their own interests ; and that whether so or not they were bound to furnish some one to open them. The court found that, if it was proper to erect gates and leave them unattended, the gates were reasonably proper, but reserved for the full court the questions whether the defendants had a right to erect gates, and whether they might do so if they employed some one to attend them. It was agreed that the appeal of the defendants might be taken up and heard at the same time. The report concluded with the statement that all plans and photographs used at the hearing might be used before the full court, and that the report in the original case was made a part of the report in this case.

From this statement of what is disclosed by the facts before us, we think that it is evident, as has been observed already in substance, that, although the proceedings were for contempt, what the parties finally attempted to do was to settle the questions whether the defendants had the right to maintain gates at the crossing, and whether they were obliged to provide some one to attend them. This, we think, could not be done in proceedings for contempt. The sole question for consideration in these proceedings was whether the defendants had complied with the terms of the decree. Although the proceedings grew out of and were incident to the original cause, and the petitions were filed in it, they were distinct from it. *Cartwright's case,* 114 Mass. 230. *Winslow* v. *Naysen,* 113 Mass. 411. *McDermott* v. *Clary,* 107 Mass. 501.

The merits of the original cause were not involved and were not open for examination. *Rogers Manuf. Co.* v. *Rogers*, 38 Conn. 121. *People* v. *Spalding*, 2 Paige, 326. *People* v. *Bergen*, 53 N. Y. 404. 4 Encyc. Pl. & Pr. 771. Rapalje, Contempt, § 117.

The ground on which courts take jurisdiction in matters of contempt, of the nature of those which were alleged here, is the obstruction to the course of justice, and the harm that would result if their process could be obeyed or disobeyed at the will of those to whom they were directed. The jurisdiction is in its nature a penal jurisdiction. *Cartwright's case, ubi supra.*

The decree in the original cause expressly left open the right of the defendants to maintain gates. If the plaintiffs desire to contest their right to do so, it should be done in proceedings where that right will be directly in issue.

The question which we have considered does not appear from the report to have been brought to the attention of the presiding justice, but we think that it presents insuperable difficulties to the consideration of the questions which have been discussed at the bar, and that the report must be discharged.

*So ordered.*   ·